UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LEON HARRISON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 20-10295-LTS |
| | ) |
| ANDREW SAUL, *Commissioner of the* | ) |
| *Social Security Administration*, | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER

March 26, 2021

SOROKIN, J.

Plaintiff Charles Leon Harrison, Jr. brings this action pursuant to section 205(g) of the

Social Security Act ("the Act"), 42 U.S.C. § 405(g)(3), challenging the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his claim for

Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") benefits. The matter is presently before the Court on Harrison's Motion to Reverse the

Commissioner's Decision (Doc. No. 15)[1] and the Commissioner's Motion to Affirm (Doc. No.

17). At issue is whether the Administrative Law Judge ("ALJ") erred (1) by improperly weighing

the opinion evidence in the record and (2) by failing to determine whether Harrison's use of a

cane is medically necessary. For the reasons that follow, Harrison's Motion to Reverse the

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing
system; pincites are to the page numbers in the ECF header. Citations to "Tr. __" reference pages
in the record transcript, which appears as Doc. No. 13 on the docket in this matter.

Commissioner's Decision (Doc. No. 15) is ALLOWED and the Commissioner's Motion to Affirm (Doc. No. 17) is DENIED.

I.      BACKGROUND

    A.  Factual Background

On December 16, 2014, Harrison was examined for weakness in his left arm by Barbara G. Rosato, NP. Tr. 394. NP Rosato referred Harrison to Dr. Lee Jacobson, whose examination revealed hypothenar wasting, slight deltoid wasting, positive credit card testing, weakness in the flexion of several digits, extreme tenderness at the left cubital fossa, and radiating pain in Harrison's arm. Tr. 396. Dr. Jacobson diagnosed Harrison with radiculopathy and cubital tunnel syndrome and referred him to a neurological urgent care clinic. Id. At the clinic, Harrison was reexamined, many of his initial examination results were confirmed, and Harrison was diagnosed with ulnar nerve radiculopathy. Tr. 398. Harrison's symptoms remained consistent during later examinations, Tr. 401, 409, 410, and he was referred for surgical evaluation, Tr. 410.

On March 6, 2015, Harrison was examined by Dr. Tamara D. Rozental for surgical evaluation. Dr. Rozental's examination revealed Harrison was capable of full motion in his left arm, that he had mildly positive Tinel's of the cubital tunnel, and slightly decreased strength. Tr. 411–12. Based on this examination and Harrison's medical history, Dr. Rozental explained Harrison was a candidate for surgical decompression to relieve his ulnar neuropathy. Tr. 412. Harrison agreed to proceed with surgery. Id.

Following the surgery on March 31, 2015, Harrison continued to experience impairments, such as decreased strength and sensation. Tr. 415. He began to show similar symptoms in his right arm and began to complain of back pain. Tr. 420, 432. Examination on January 22, 2016 revealed that Harrison had developed an antalgic gait, had pain lying down, had decreased

2

strength, had lost the lordotic curve of his lumbar spine, and was tender to palpation of the para-spinal region. Tr. 438. An MRI taken on February 10, 2016 revealed possible L5-S1 spondylolysis with 3-mm anterolisthesis of the L5 on S1 and severe bilateral L5-S1 neural foraminal narrowing impinging on the exiting L5 nerve roots. Tr. 457. According to his doctors, Harrison developed a "highly antalgic" gait, right sided weakness, and began to report severe back pain. Tr. 440, 443, 448, 451.

On August 2, 2016, Harrison was examined by Dr. Andrew Matthews for his lower back pain. Tr. 467. Dr. Matthews's examination revealed Harrison walked with a cane, had a wide-based gait, had marked kyphosis,[2] had full range of motion in his arms and legs, positive bilateral Tinel's testing, and no observable decrease in strength. Tr. 470. Harrison returned to Dr. Matthews on August 12, 2016. Dr. Matthews documented that Harrison had a full range of motion in his arms and legs, full neck flexion and extension, and that he could twist his back without pain. Tr. 475. Harrison reported tenderness with motion in his arms. Id. Dr. Matthews once again noted Harrison's impaired gait. Id. Harrison saw Dr. Matthews again on December 12, 2016 and January 25, 2017 for follow up treatments, during which Dr. Matthews noted no significant changes in Harrison's symptoms. Tr. 490, 495. Harrison's physical therapist during this period also noted similar symptoms during treatment. Tr. 482.

On September 27, 2017, Dr. Matthews authored a letter in which he opined that Harrison's condition limited: (1) his mobility; (2) his ability to sit for long periods; (3) and his ability to lift objects. Tr. 375. Dr. Matthews also noted Harrison suffered from mild drowsiness

---

[2] Kyphosis is an "abnormally increased convexity in the curvature of the thoracic spine as viewed from the side[.]" Pollard v. Astrue, 867 F. Supp. 2d 1225, 1229 (N.D. Ala. 2012).

due to his required medications. Id. Harrison was also examined by Dr. John E. Butter, who noted that Harrison used a cane and had slightly decreased strength. Tr. 507.

On October 25, 2017, Harrison was examined by Dr. Matthews and Dr. Butter. Dr. Matthews documented that Harrison used a cane and noted positive right sided straight leg raise testing. Tr. 516. Dr. Butter also noted Harrison's cane use and documented that Harrison had tenderness to palpation of his arms. Tr. 518. Dr. Matthews and Dr. Butter recorded similar examination notes when Harrison returned to them on January 3, 2018. Tr. 522, 525. Sometime thereafter, Harrison was examined by a different doctor who also noted similar symptoms in her evaluation. Tr. 547.

On March 28, 2018, Harrison returned to Dr. Matthews and Dr. Butter for his pain. Tr. 550. Their examination showed Harrison used a cane, had mild pain to palpation of his arms, and noted no lack of strength or signs of weakness. Id. Their treatment notes detail that Harrison appeared to suffer "more severe symptoms [of pain] than would be expected from the objective findings" of testing. Tr. 551. A follow up examination on June 20, 2018 documented Harrison was kyphotic, used a cane, had full active and passive range of movement, suffered mild pain from palpation of his arms, had positive straight leg testing, and suffered tenderness with extension or twisting of his back (but not with flexion). Tr. 611. An examination by a different doctor on July 17, 2018 revealed Harrison had a markedly kyphotic posture, irregular leg movements, used a cane, had difficulty with activation, decreased reflexes in his arms and in one ankle, and decreased sensation in his hands and lower legs. Tr. 791.

On May 8, 2018, as part of the state agency review of Harrison's claim file, Dr. Brian Strain reviewed Harrison's medical history and made certain determinations as to Harrison's limitations. Dr. Strain opined that Harrison could occasionally lift up to twenty pounds, that he

could frequently lift up to ten pounds, that he was able to stand or walk (with normal breaks) for six hours in an eight-hour workday, and that he could sit for roughly the same amount of time. Tr. 124. Dr. Strain also opined that Harrison had postural limitations and that "[a] medically required hand-held assistive device is necessary for ambulation." Id. A similar analysis performed by Dr. Linda Margiloff, another state agency reviewing physician, reached identical conclusions to those expressed by Dr. Strain. Tr. 113.

On September 19, 2018, Harrison returned to Dr. Matthews and Dr. Butter. Tr. 615. Examination revealed Harrison was kyphotic, had a full range of movement, suffered pain to palpation in his arms, had positive straight leg raise testing, and experienced tenderness when extending and twisting his back. Tr. 615.

On October 24, 2018, Dr. Matthews authored a medical source statement regarding Harrison's impairments. Tr. 557. Dr. Matthews opined Harrison suffered from fibromyalgia, spondylolysis, and left ulnar neuropathy. Id. He further opined that the symptoms of these conditions would often interfere with Harrison's ability to concentrate; that he could walk less than a city block without rest; that he could sit for a total of three hours in a work day and stand or walk for less than one hour in a workday; that Harrison would need to take two or three unscheduled breaks in a given workday; that he could occasionally lift ten pounds, but never more; could use his hands or fingers less than twenty percent of the workday; and would be unexpectedly absent more than four times per month. Tr. 559–60.

On October 31, 2018, Harrison returned to Dr. Matthews and Dr. Butter for examination. Tr. 799. The results were consistent with his prior visits. Tr. 801. Following this visit, Dr. Matthews authored a letter stating that Harrison's "fibromyalgia in combination with his degenerative disc disease" would not be "compatible with even light duty work." Tr. 622.

B.  Procedural Background

Harrison, who is currently fifty years old (born August 15, 1970), submitted an application for DIB on January 18, 2018 and submitted an application for SSI on February 28, 2018. Tr. 19. In both applications, Harrison alleged disability beginning November 26, 2014.[3] Id. His claims were denied initially on April 5, 2018, and again upon reconsideration on May 16, 2018. Id. Following Harrison's timely written request, a hearing was held before ALJ Daniel J. Driscoll on December 13, 2018. Tr. 42. After the hearing, the ALJ issued a decision denying Harrison's claims. Tr. 19. The Appeals Council denied review on December 13, 2019, making the ALJ's decision the final agency decision. Tr. 1. Harrison has exhausted his administrative remedies and now seeks judicial review pursuant to 42 U.S.C. § 405(g).

II.   LEGAL STANDARDS

A.  Standard of Review

The court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's inquiry, however, is limited to whether the ALJ "deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The Commissioner's findings of fact are "conclusive when supported by substantial evidence" unless they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Id. The substantial evidence standard is satisfied when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647

---

[3] Harrison subsequently amended his applications to reflect an onset date of September 27, 2016. Id.

F.2d 218, 222 (1st Cir. 1981). If this standard is met, a court must affirm the agency's decision "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). It is the role of the ALJ, not the role of the Court, to "decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Thus, the ALJ is responsible for determining the "ultimate question of disability." Richardson v. Perales, 402 U.S. 389, 399 (1971).

B.  Standards Governing Evaluations of Disability

An individual is entitled to DIB and SSI if he is "disabled" within the meaning of the Act prior to the expiration of his insured status. 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A).

In determining whether an individual is disabled, the Social Security Administration applies a sequential five-step evaluative process: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a severe mental or physical impairment or combination of impairments, he is not disabled; (3) if the claimant has a severe impairment or combination of impairments that meets or equals one of the conditions listed in the Social Security regulations, he is disabled; (4) if the claimant's residual functional capacity ("RFC") is such that the claimant is able to perform "past relevant work," he is not disabled; and (5) if the claimant, given his age, education, work experience, and residual functional capacity, is unable to perform other work, he is disabled. 20 C.F.R. §§ 404.1520, 416.920. The claimant

bears the burden of establishing disability in steps one through four. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). At step five, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. Id.

III.    DISCUSSION

A.  The ALJ's Decision and Harrison's Objections

In his decision, the ALJ concluded that Harrison failed to meet the statutory definition of disability under the Act. At step one, the ALJ determined Harrison had not engaged in substantial gainful activity since September 27, 2016, the amended onset date. Tr. 22. At step two, the ALJ found Harrison had the following severe impairments: degenerative disc disease, peripheral neuropathy, ulnar neuropathy, and poly-arthralgias. Id. At step three, the ALJ found Harrison did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 28. At the fourth step, the ALJ determined that Harrison retained the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to the following limitations:

> [The claimant must avoid] all climbing of ladders, ropes and scaffolds as well as more than occasional balancing, stooping, kneeling, crouching, crawling and climbing stairs or ramps. The claimant is limited to only frequent pushing, pulling and handling with the left upper extremity. He must avoid concentrated exposure to vibration and hazards.

Tr. 29.

In rendering this determination, the ALJ considered a range of evidence. First, the ALJ reviewed Harrison's own self-reported limitations. Harrison reported that: (1) he is "unable to work because of difficulties with his back, neuropathy in both arms, tremors in

his hands, sciatica pain running into his legs and random shooting pains"; (2) he requires

medication for hypertension and suffers from a heart murmur; (3) he has difficulty using

his hands to accomplish delicate tasks such as manipulating zippers; (4) he uses a cane

when standing or walking; and (5) he is limited with respect to his daily activities. Tr.

29–30. The ALJ found Harrison "does have limitations related to his impairments" but

that "his testimony [was] not sufficient to establish limitations beyond those included in

the above-noted residual functional capacity given the objective medical evidence and the

prescribed course of treatment." Tr. 30.

The ALJ next considered the medical source opinion evidence in the record. The

ALJ found the weight of evidence did not support Dr. Matthews's formulation of

Harrison's residual functional capacity because the "limitations contained in [Dr.

Matthews's] assessment appear to be based on the claimant's subjective complaints and

not consistent with the Doctor's own physical exam findings." Tr. 30. The ALJ then

highlighted various notes from Dr. Matthews's records to support his conclusion that Dr.

Matthews's opined limitations were inconsistent with his own exam findings. Tr. 30–31.

In contrast, the ALJ found the weight of evidence generally supported the assessments of

the state agency medical consultants, Dr. Strain and Dr. Margiloff ,who opined that

Harrison was limited to light exertion with certain postural and environmental limitations.

Tr. 31. The ALJ went on to find, however, that the objective medical evidence supported

additional limitations on Harrison's ability to push, pull, and handle with his left arm

beyond those recognized by the state agency medical consultants. Id.

After determining Harrison retained the residual functional capacity to perform

light work, subject to the above detailed limitations, the ALJ proceeded with step four of

the sequential evaluative process. At this step, the ALJ found that Harrison was able to perform his past relevant work as a hotel clerk. Tr. 31. In making this determination, the ALJ relied upon the opinion evidence of the vocational expert, who testified that someone with the above-noted residual functional capacity would be able to work in such a role. Id. In the alternative, the ALJ found that there are other jobs that exist in significant numbers in the national economy that someone with Harrison's residual functional capacity, age, education, and work experience could perform. Consequently, the ALJ determined that Harrison was not disabled within the meaning of the Act. Id.

Harrison objects. He contends the ALJ's RFC determination is unsupported by substantial evidence for two reasons. First, he argues the ALJ "failed to properly weigh the opinion evidence in accordance with the prevailing rules and regulations." Doc. No. 16 at 1. Second, he argues the ALJ "failed to properly make a determination as to whether a cane was medically necessary for balance as well as ambulation." Id. The Court discusses each objection in turn.

### B.  The ALJ Properly Weighed the Opinion Evidence

Harrison's first objection is that the ALJ "failed to properly weigh the opinion evidence in accordance with the prevailing rules and regulations." Doc. No. 16 at 9. Specifically, Harrison argues the ALJ improperly discounted Dr. Matthews's opinion evidence when determining Harrison's RFC. The ALJ found that the weight of the evidence did not support Dr. Matthews's opinion for two reasons. First, the ALJ noted the limitations opined by Dr. Matthews "appear to be based on [Harrison's] subjective complaints." Tr. 30. Second, the ALJ noted these limitations were "not consistent with [Dr. Matthews's] own physical exam findings." Id. Harrison takes issue with each of these bases. Because the Court concludes that the ALJ's second basis for

10

discounting Dr. Matthews's medical source opinion is supported by substantial evidence, it need not consider whether the ALJ's first basis was improper.

Social Security Ruling ("SSR") 96-8p directs that ALJs, during the RFC determination, "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). In order to determine what weight to assign a medical source opinion, the ALJ must consider the following factors: supportability, consistency, relationship, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate." Nicole C. v. Saul, No. CV 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(b)(2)). ALJs must consider the persuasiveness of all medical opinions in a claimant's case record and need not defer to the medical opinions of a claimant's treating physicians. See 20 C.F.R. § 404.1520c. In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not ... persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

An ALJ's decision to accord a treating physician's opinion with little weight will be sustained on review so long as one of the reasons given by the ALJ is proper and adequately supported. See Gonzalez v. Astrue, C.V. No. 11-30201-KPN, 2012 WL 2914453, at *3 (D. Mass. July 5, 2012) (holding that even if one reason for affording opinion evidence little weight was improper, ALJ's treatment of opinion will be sustained if other stated reason is proper and adequately supported); see also Rodriguez v. Astrue, 694 F. Supp. 2d 36, 45 (D. Mass. 2010)

(same) (citing <u>Gonzalez Perez v. Sec'y of Health & Human Servs.</u>, 812 F.2d 747, 749 (1st Cir. 1987)).

The ALJ's second basis for discounting Dr. Matthews's opinion evidence was that it was "not consistent with [Dr. Matthews's] own physical exam findings." Tr. 30. In reaching this conclusion, the ALJ noted that a recent examination by Dr. Matthews had revealed:

> [Harrison] had full range of motion in his neck and Spurling's was negative. His heart rate and rhythm were regular was a 2/6 systolic murmur. His lungs were to clear to auscultation bilaterally with no evidence of any respiratory distress. His abdomen was soft, nontender and positive for bowel sounds. His extremities were warm and well perfused with no clubbing, cyanosis or edema. Neurological exam showed full active and passive range of motion. Motor strength was 5/5. Straight leg raise was positive. There was tenderness in the back on extension and twisting but not with flexion.

Tr. 30–31 (citing Tr. 799–804).

Harrison argues this basis is improper because the ALJ's discussion focused only on benign examination results and overlooked evidence that supported Dr. Matthews's opined limitations. <u>Id.</u> at 11–12. The Commissioner responds the ALJ properly examined the record and that his conclusion is supported by substantial evidence. Doc. No. 18 at 12–13. The Commissioner has the better argument.

Harrison is wrong to argue the ALJ only considered irrelevant evidence. Here, the ALJ properly highlighted evidence in conflict with Dr. Matthews's opinion. The ALJ noted, for example, that Dr. Matthews observed Harrison's motor strength to be 5 out of 5, that Harrison only reported "tenderness" when extending or twisting his back, that he had no difficulty in flexing his back, and that his circulatory and respiratory systems were well functioning. <u>See</u> Tr. 30–31. This evidence certainly sits in tension with Dr. Matthews's opined limitations on Harrison's ability to sit and move. The ALJ also pointed to Dr. Matthews's notes that Harrison's extremities had good circulation and demonstrated "no clubbing, cyanosis or edema," Tr. 30,

which bears on Dr. Matthews's opined limitations regarding Harrison's use of his hands and fingers.

Harrison is also wrong to argue the ALJ overlooked evidence he ought to have considered. Harrison suggests the ALJ failed to consider his "kyphotic posture, back tenderness, pain to palpation of his upper extremities, and positive straight leg raise testing." Doc. No. 16 at 11. But this argument begins from a mistaken premise; the ALJ did consider much of the evidence to which Harrison points. For example, the ALJ expressly noted Harrison's back tenderness and positive straight leg raise test in his discussion of Dr. Matthews's opinion evidence. See Tr. 30–31 ("Straight leg raise was positive. There was tenderness in the back on extension . . . ."). And the ALJ discussed Harrison's posture and pain issues, as reflected by Dr. Matthews's notes, throughout his analysis of the case. See, e.g., Tr. 25–26. Although the ALJ did not directly discuss these last two items of evidence in commenting on Dr. Matthews's medical source opinion it is axiomatic that "[a] hearing officer 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" Coggon v. Barnhart, 354 F. Supp. 2d 40, 55 (D. Mass. 2005) (quoting NLRB v. Beverly Enters. Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999)). Upon review, the Court concludes the ALJ properly considered the evidence supporting and undermining Dr. Matthews's opined limitations.

Despite his protestations otherwise, Doc. No. 19 at 4, it is apparent Harrison asks the Court to reweigh the evidence. But it is not for the Court to second guess the ALJ's findings, so long as those findings are supported by substantial evidence. Nguyen, 172 F.3d at 35; Rodriguez Pagan, 819 F.2d at 3 (explaining courts "must affirm the [ALJ's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence").

Applying this deferential standard, the Court finds no error in the ALJ's conclusion that Dr. Matthews's treatment notes are inconsistent with his opined limitations.[4]

In sum, the Court holds the ALJ did not err in concluding Dr. Matthews's opinion evidence was inconsistent with his treatment notes.[5] Because at least one of the ALJ's bases for discounting Dr. Matthews's medical source opinion is adequately supported, the Court finds no error in the ALJ's weighing of the opinion evidence.

C. The ALJ Improperly Failed to Consider Whether to Include an Assistive Device Limitation in Harrison's RFC

Harrison next argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to make a finding as to whether Harrison's use of a case is medically necessary. This error is prejudicial, Harrison asserts, because the ALJ did not account for an assistive device limitation in eliciting the vocational expert's testimony upon which the ALJ relied in step four of the sequential evaluative process. Doc. No. 19 at 5. The Commissioner responds the ALJ was not required to make an assistive device determination because the record does not establish that Harrison's use of a cane is medically required. Doc. No. 18 at 15–18. Here, Harrison has the better argument.

---

[4] Harrison also suggests the ALJ mischaracterized certain evidence regarding Harrison's test results. Doc. No. 16 at 12–13. But, as Harrison concedes, the ALJ did not rely on any of this evidence in determining what weight to accord Dr. Matthews's medical source opinion. Id. at 12. Thus it is irrelevant, as to this issue, whether the ALJ characterized this evidence correctly.

[5] Harrison also briefly takes issue with the ALJ's decision to credit the testimony of the state agency reviewing physicians, suggesting the ALJ was required to reject those opinions in their entirety because he occasionally departed from the state physicians' analysis. Doc. No. 16 at 13. But this is mistaken. ALJs are free to credit one aspect of a medical source opinion while rejecting a different aspect of that same opinion. SSR 96–2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). In any event, Harrison has identified no prejudice arising from the ALJ's determination as to this issue.

In his written decision, the ALJ recognized certain items of evidence in the record which would seem to support Harrison's need for a cane. At step two of the sequential evaluative process, to determine whether Harrison suffered from one or more "severe impairments," the ALJ summarized the examination notes of Harrison's treating physicians. As described in the ALJ's decision, many of these records document Harrison's use of a cane. See Tr. 24 (noting Dr. Matthews's August 2016 observation that Harrison "walked using a cane with a wide-based gait"); Tr. 25 (noting Dr. Andrews's December 2016 observation Harrison "walked using a cane with a marked antalgic gait"); id. (noting Dr. Aner's March 2017 observation Harrison "presented walking with an extremely antalgic gait with the help of a cane"); Tr. 26 (noting Dr. Matthews's January 2018 observation Harrison "walked with a cane in his right hand"); id. (noting Dr. Matthews's June 2018 observation Harrison "walked with the assistance of a cane"). And at step three of the sequential evaluative process, the ALJ expressly found that Harrison "walks with an antalgic gait and uses the assistance of a cane in one hand." Tr. 29.

Harrison also points to other evidence in the record which supports the conclusion he requires a cane. For example, he points to the observations of a number of Harrison's treating physicians that he uses a cane to ambulate. Doc. No. 16 at 14 (citing Tr. 448, 457, 465, 470, 475, 490, 500, 507, 510, 516, 518, 525, 553, 611, 791, 803). Many of these comments were, of course, considered by the ALJ during his analysis at step two of the sequential evaluative process. And those comments which were not expressly considered by the ALJ are largely similar to those the ALJ noted. Compare, e.g., Tr. 25 (ALJ's decision noting Dr. Andrews's December 2016 observation that Harrison "walked using a cane with a marked antalgic gait") with Tr. 490 (Dr. Levenson's January 2017 observation, not noted by ALJ, that Harrison "walks using [a] cane with [a] marked intermittently antalgic gait"). Each of these medical observations,

whether expressly noted by the ALJ or not, lend support to Harrison's claim he uses a cane to ambulate. Harrison also points, Doc. No. 16 at 14, to the medical source opinions of Dr. Strain and Dr. Margiloff, the state agency's reviewing physicians. Both of these doctors offered opinion evidence that, in Harrison's case, "[a] medically required hand-held assistive device is necessary for ambulation." Tr. 112; see also Tr. 124.

Despite this evidence that Harrison requires a cane, the ALJ failed to determine whether Harrison's cane was medically required. See Tr. 29–31. Consequently, the ALJ did not consider whether to include an assistive device limitation in Harrison's RFC. During the RFC determination itself, the ALJ did not discuss the above surveyed evidence of Harrison's cane use. Nor did the ALJ comment on his earlier step three determination that Harrison uses a cane. The ALJ discussed the state reviewing physicians' opinion evidence, crediting it as generally supported by medical evidence, but neglected to note that these same physicians had opined that Harrison requires a cane for ambulation. Tr. 31.[6] Indeed, the ALJ's only discussion of Harrison's use of a cane during the RFC determination comes during his analysis of Harrison's self-reported limitations. Tr. 30. But this brief discussion does not reveal what significance, if any, the ALJ attached to Harrison's own reports of his need for a cane.[7] At no point did the ALJ explain why he chose to not include an assistive device limitation in Harrison's RFC. Consequently, the Court

[6] To be sure, ALJs are permitted, if not encouraged, "to address separately each medical opinion from a single source." SSR 96–2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). Thus, the ALJ was free to accept some of these physicians' opinions and reject others. The error here is not that the ALJ was required to find these opinions persuasive as to Harrison's use of a cane. Rather, the error (as shall be explained) is that the ALJ failed to address the issue at all.

[7] The ALJ correctly noted Harrison's own reports that he used a cane but seemingly dismissed this report, along with the remainder of Harrison's testimony, as "not sufficient to establish limitations beyond those included in the above-noted residual functional capacity given the objective medical evidence and the prescribed course of treatment." Id. The Court is unable to determine from this brief treatment whether the ALJ credited Harrison's self-reported cane use.

is unable to determine the ALJ's rationale for not including an assistive device limitation in Harrison's RFC.

The ALJ's failure to explain the lack of an assistive device limitation in Harrison's RFC is error. "A cane, as with all medically required hand-held assistive devices, must be addressed in the RFC analysis." Chafin v. Barryhill, No. 116CV00623SEBMJD, 2017 WL 1497200, at *4 (S.D. Ind. Mar. 21, 2017) (citations omitted), R. & R. adopted 2017 WL 1452093 (S.D. Ind. Apr. 20, 2017); accord Dubord, 2016 WL 6462268, at *6–7 (remanding social security claim after holding ALJ's RFC determination was unsupported by substantial evidence when ALJ improperly overlooked evidence claimant required cane). "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." Thomas v. Colvin, 534 F. App'x 546, 550 (7th Cir. 2013) (remanding social security claim due to "the ALJ's failure to address [claimant's] need for a cane") (quoting Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004)). Consequently, where it may be reasonably inferred from the record before the ALJ that "assistive devices [are] medically necessary, . . . the ALJ ha[s] a duty to discuss the relevant evidence and either explain why he [is] rejecting it or include it in Plaintiff's RFC assessment." Thompson v. Berryhill, No. CIV-17-923-R, 2018 WL 4402971, at *3 (W.D. Okla. Mar. 13, 2018), R. & R. adopted in relevant part, No. CIV-17-923-R, 2018 WL 3427652 (W.D. Okla. July 16, 2018).

Of course, an ALJ is not required to explain themselves each and every time they omit an assistive device limitation from a claimant's RFC. Often the ALJ's rationale for doing so will be apparent from the record. Cf. Coggon, 354 F. Supp. 2d at 55 ("A hearing officer 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting Beverly, 174 F.3d at 26)). "Nevertheless, when there is

17

considerable evidence contrary to the position of the Social Security Administration, the hearing officer must provide at least a minimal analysis of this contrary evidence." Crespo v. Astrue, No. CIV.A.08-10846DPW, 2009 WL 1459691, at *6 (D. Mass. May 26, 2009) (citing DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 189 (D. Mass. 2009)). After a certain point, the evidence of a claimant's need for an assistive device becomes sufficiently weighty that an ALJ will err should they fail to determine whether such a device is medically required. An examination of two nonprecedential decisions of the United States Court of Appeals for the Seventh Circuit illustrates this point.

In Thomas v. Colvin, 534 Fed. App'x 546 (7th Cir. 2013), the Seventh Circuit held that an "ALJ's failure to address [a claimant's] need for a cane required remand" because "the ALJ ignored virtually all the evidence in the record demonstrating [the claimant's] need for a cane." Thomas, 489 Fed. App'x at 550. The Seventh Circuit noted the "extensive . . . evidence" in the record supporting the claimant's need for a cane, including doctor notes describing repeated falls, a prescription for a cane, questionnaires the plaintiff submitted to the agency explaining her need for a cane, doctors' observations the plaintiff used a cane, and the claimant's testimony as to her need for a cane. Id. The Seventh Circuit faulted the ALJ for failing "to consider the issue at all, leaving [the Court] without a finding to review" and concluded that remand was required. Id. at 550.

By contrast, in Tripp v. Astrue, 489 Fed. App'x 951 (7th Cir. 2012), the Seventh Circuit found no error on the part of an ALJ who failed to expressly consider whether to include an assistive device limitation in a claimant's RFC. Tripp, 489 Fed. App'x at 954–56. The Seventh Circuit held the ALJ's decision "necessarily include[d] an implicit finding" the claimant did not require an assistive device, id. at 954, and stressed the lack of evidence in the record to support

18

the claimant's argument his crutch was "medically necessary," id. at 955. The Tripp Court noted that all of the claimant's evidence of need was derived from his own "self-reports" and emphasized the claimant had failed to offer an "unambiguous opinion from a physician stating . . . an assistive device is medically necessary." Id. Consequently, the Seventh Circuit held that the ALJ's implicit finding the claimant's crutch was not medically necessary was supported by substantial evidence and affirmed the ALJ's decision. Id.

This case is more like Thomas than like Tripp. The record is replete with evidence suggesting Harrison's need for an assistive device. The ALJ found Harrison suffers from degenerative disc disease, peripheral neuropathy, ulnar neuropathy, and poly-arthralgias. These impairments cause Harrison to walk "with an extremely antalgic gait." AR25. Consequently, Harrison's physicians repeatedly noted he "walks using [a] cane with [a] marked intermittently antalgic gait." Tr. 490. Harrison testified at the hearing that he required a cane to walk. Tr. 68. The two-state agency reviewing physicians opined that, for Harrison, "[a] medically required hand-held assistive device is necessary for ambulation." Tr. 112. And, indeed, the ALJ found that Harrison "walks with an antalgic gait and uses the assistance of a cane in one hand." Tr. 29. Faced with this evidentiary record, the ALJ was obliged to make a determination as to whether Harrison's use of a cane was medically required.

The Commissioner defends the ALJ's decision, arguing Harrison failed to discharge his "high burden" for establishing that his cane is medically required. Doc. No. 18 at 17 (quoting Helms v. Berryhill, No. 3:16-189, 2017 WL 3038154, at *8 (E.D. Va. June 30, 2017) R. & R. adopted, 2017 WL 3032216 (E.D. Va. July 17, 2017). Specifically, the Commissioner argues the record does not contain "medical documentation establishing the need for a hand-held assistive device to aid in walking" as required by SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2,

1996). The Commissioner's objection is well taken, and it may indeed be true that Harrison's evidence fails to establish medical necessity. "The error in this case, however, is not that the medical evidence required the ALJ to find that [Harrison] needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving [the Court] without a finding to review." Thomas, 534 Fed. App'x at 550. On remand, the ALJ may well determine Harrison has not satisfied his burden. But the ALJ might also find, for example, that the medical opinions of Dr. Strain and Dr. Margiloff satisfy the documentation requirement. Their testimony that "[a] medically required hand-held assistive device is necessary for ambulation" certainly appears, at least facially, to satisfy the requirements of SSR 96-9p.[8] True, the Commissioner offers arguments why these opinions should not be taken at face value, Doc. No. 18 at 17, but those arguments go to the weight of the evidence, a matter entrusted by law to the ALJ and not to the Court.[9]

The Court holds the ALJ erred in failing to make a determination as to whether Harrison's use of a cane was medically necessary. Because this error was prejudicial, remand is required.

---

[8] Other courts in this circuit have reached similar conclusions regarding identically worded medical opinions from state agency reviewing physicians. See Dubord, 2016 WL 6462268, at *2, 6–7 (reversing because, among other reasons, ALJ failed to consider state agency reviewing physician's opinion "[a] medically required hand-held assistive device is necessary for ambulation"); Poulin v. Colvin, Civil No. 2:14–CV–102–DBH, 2015 WL 1809194, at *5 (D. Maine April 21, 2015) (same).

[9] The cases cited by the Commissioner in support of his arguments only serve to underscore this point. In each instance, the only question was whether a finding of medical necessity vel non could be sustained under the substantial evidence standard. See Tripp, 489 Fed. App'x at 956 (affirming ALJ's decision because "the record adequately supports the [implicit] finding of no medical necessity); Spaulding v. Astrue, 379 Fed. App'x 776, 780 (10th Cir. 2010) (addressing claimant's "contention that the ALJ made a factually incorrect finding concerning his use of a cane"); Howze v. Barnhart, 53 Fed. App'x 218, 222 (3rd Cir. 2002) (holding the "evidence presented by [claimant] was insufficient to support a finding that his cane was medically necessary").

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Harrison's Motion to Reverse (Doc. No. 15) is ALLOWED and the Commissioner's Motion to Affirm (Doc. No. 17) is DENIED. The case is remanded for further proceedings not inconsistent with this decision, specifically as to the issue of Harrison's use of a cane. A separate judgment shall issue.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge